19-127 (L)
*Emamian v. Rockefeller Univ.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of August, two thousand twenty.

Present:     DEBRA ANN LIVINGSTON,
            MICHAEL H. PARK,
                 *Circuit Judges*,
            STEFAN R. UNDERHILL,
                 *District Judge.**

───────────────────────────────

EFFAT S. EMAMIAN,

          *Plaintiff-Appellant-Cross-Appellee*,

     v.                                              19-127
                                                     19-168

ROCKEFELLER UNIVERSITY,

          *Defendant-Appellee-Cross Appellant*.

───────────────────────────────


For Plaintiff-Appellant-Cross-Appellee:     JONATHAN C. MOORE (Luna Droubi and David B. Rankin, *on the brief*), Beldock Levine & Hoffman LLP, New York, NY.

---

* Chief Judge Stefan R. Underhill, of the United States District Court for the District of Connecticut, sitting by designation.

1

For Defendant-Appellee-Cross-Appellant: ELISE M. BLOOM (Keisha-Ann G. Gray, Harris M. Mufson, Bettina Plevan, on the brief), Proskauer Rose LLP, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Batts, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant-Cross-Appellee Dr. Effat Emamian ("Emamian") appeals from a final judgment entered by the U.S. District Court for the Southern District of New York (Batts, *J.*), following a jury trial, which awarded Emamian $250,000 in back pay and $200,000 in emotional distress damages on her claim of intentional discrimination on the basis of race or national origin under the New York City Human Rights Law ("NYCHRL") brought against her former employer, Defendant-Appellee-Cross-Appellant Rockefeller University ("Rockefeller"). Rockefeller filed a cross-appeal. We assume the parties' familiarity with the underlying facts and the procedural history of the case, which are set forth in detail in the opinion issued simultaneously with this summary order. The opinion addresses the parties' arguments regarding the jury instructions, verdict form, and verdict, while this summary order addresses the parties' remaining arguments.

*Emamian's Appeal*

Emamian contends that the district court erred in (1) remitting the jury's $2,000,000 emotional distress damages award to $200,000; (2) denying several requests to reopen discovery; and (3) limiting the testimony of her statistical expert with respect to her gender discrimination claim. None of these arguments has merit.

2

1. <u>Remittitur of Emotional Distress Damages</u>

Emamian argues that the district court erred by ordering a new trial as to emotional distress damages unless Emamian accepted a remitted emotional distress damages award of $200,000. This Court "review[s] a district court's ruling on remittitur for abuse of discretion." *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 672 (2d Cir. 2012). Furthermore, where, as here, "the district court applies the least intrusive standard to calculate remittitur—granting remittitur 'only to the maximum amount that would be upheld by the district court as not excessive,'" this Court's "review is particularly deferential." *Id.* (quoting *Earl v. Bouchard Transp. Co., Inc.*, 917 F.2d 1320, 1330 & n.8 (2d Cir. 1990)).

We detect no abuse of discretion in the district court's reduction of the $2,000,000 award to $200,000. Emamian's first argument—that the district court incorrectly employed the federal, rather than New York, standard for remittitur—is belied by the record. The court explicitly acknowledged that New York law was applicable and discussed how the New York standard for remittitur differs from the federal standard. *See* Special App'x 66–67 (stating that New York law applied, setting forth the New York standard, and observing that "[t]his standard requires a more exacting review than the 'shocks the conscience' standard generally applied by federal courts"). While the court later also noted that the analysis of the extent of Emamian's emotional distress pursuant to New York law "appear[ed] similar to the federal, 'significant emotional distress' standard," *id.* at 67, that observation does not suggest that the court failed to apply the correct standard in evaluating the ultimate appropriateness of the jury's award.

Nor can Emamian demonstrate more broadly that the district court abused its discretion in determining that remittitur was warranted. The court engaged in a careful, thorough survey of comparable cases, correctly determining that even cases involving far more egregious conduct

3

culminated in awards of far less than $2,000,000 and that comparable cases resulted in awards in the low six-figure range. Accordingly, we uphold the district court's remittitur determination for substantially the reasons stated in its well-reasoned opinion.

2. Discovery Rulings

Emamian next argues that the district court abused its discretion in denying Emamian's multiple requests to reopen discovery to supplement the record with respect to her damages. This Court will reverse a district court's ruling regarding discovery only "upon a clear showing of an abuse of discretion." *In re DG Acquisition Corp.*, 151 F.3d 75, 79 (2d Cir. 1998). Under Federal Rule of Civil Procedure 16(b)(4), a discovery schedule set by the court may be modified only for "good cause," which "depends on the diligence of the moving party." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000).

Emamian falls far short of demonstrating an abuse of discretion. As for the district court's denials of Emamian's requests in January and March of 2010, Emamian failed to raise any argument with respect to those rulings in her opening brief, which focused solely on the district court's denials of her requests to reopen discovery on the basis that the eight-year delay prior to trial required supplementation of the record as to damages. These arguments are therefore waived. *See Niagara Mohawk Power Corp. v. Hudson River–Black River Regulating Dist.*, 673 F.3d 84, 107 (2d Cir. 2012) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

Emamian's challenges to the district court's subsequent rulings fare no better. First, Emamian cannot demonstrate any error with respect to the denials of her requests to reopen discovery in October 2012 and January 2017 following two separate withdrawals of counsel. The desire by new counsel to reopen discovery for the purposes of pursuing new damages theories does

4

not amount to "good cause" necessitating a reversal of the district court's rulings, particularly in light of the prejudice to Rockefeller that would have ensued from additional delay in the already-protracted case. *See Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34 (1962) (noting that a party who voluntarily chooses his attorney "cannot . . . avoid the consequences of the acts or omissions of this freely selected agent"); *see also Hussain v. Nicholson*, 435 F.3d 359, 363–64 (D.C. Cir. 2006) (concluding no "good cause" existed to extend Rule 16 deadline despite the court's "sympath[y]" for the plaintiff, who was "the victim of [the former attorney's] negligence," and sympathy for the new counsel, "who has tried hard to salvage her client's case").

The district court likewise did not abuse its discretion in rejecting Emamian's attempts to reopen discovery on the eve of trial and again in anticipation of retrial. Emamian's request to have her statistical expert testify as to damages, denied by the court on December 20, 2017, was yet another attempt to introduce new damages theories that was properly denied for the reasons stated above. Finally, the denial of Emamian's post-trial requests to reopen discovery to supplement the record regarding damages was a proper exercise of discretion in light of the court's ruling that any jury verdict above $200,000 would necessitate remittitur. Given the limited scope of its grant of Rockefeller's motion for a new trial, the court properly cabined the issues on retrial to those that were previously presented to the jury. We therefore conclude that the district court acted well within its discretion in denying Emamian's requests to reopen discovery.

3. Evidentiary Rulings

Emamian's final contention is that the district court improperly limited the testimony of her statistical expert, Dr. Elias Grivoyannis ("Grivoyannis"), with respect to her gender discrimination claim, which was rejected by the jury. We need not address the merits of this claim on appeal because Emamian does not request any relief that could redress the alleged error. To

5

the extent that Emamian intended to argue that the district court's limitations were prejudicial and that the jury would have otherwise found in her favor as to gender discrimination, the applicable remedy would be a new trial as to liability. However, Emamian does not seek a retrial of that scope, requesting only "a new trial ordered on the issue of punitive damages" or "a new trial ordered on damages only." Br. of Plaintiff-Appellant-Cross-Appellee at 41. At any rate, we review a district court's rulings on the admissibility of expert testimony for abuse of discretion and will sustain such rulings unless they are manifestly erroneous. *Restivo v. Hessemann*, 846 F.3d 547, 575 (2d Cir. 2017). Here, the district court's limitations on Grivoyannis's testimony were eminently reasonable. Emamian has not demonstrated error, much less manifest error.

*Rockefeller's Appeal*

Rockefeller argues that (1) the district court erred by declining to dismiss Emamian's complaint as a sanction for her failure to comply with discovery obligations and (2) the evidence was insufficient to support the jury's verdict. We are unpersuaded.

1. Dismissal Sanction

Rockefeller argues that the district court abused its discretion by failing to dismiss Emamian's complaint as a sanction for her failure to produce evidence regarding a recent psychiatric examination and eighteen prior medical providers. According to Rockefeller, the district court's sanction—namely, precluding Emamian from introducing certain evidence at retrial and permitting Rockefeller to use the materials in cross-examination at retrial—was inadequate because it did not address the irreparable prejudice to Rockefeller caused by Emamian's failure to comply with her discovery obligations.

District courts have the authority to impose sanctions, including "dismissing the action," for failing to obey a discovery order or for failing to supplement an earlier response under Federal

6

Rule of Civil Procedure 26(e). Fed. R. Civ. P. 37(b), (c). "A district court has wide discretion in imposing sanctions, including severe sanctions, under Rule 37(b)(2), and will only be reversed if its decision constitutes an abuse of discretion." *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1365 (2d Cir. 1991). In reviewing the exercise of discretion, "[w]e afford considerable deference to the district court's familiarity with the proceedings." *Friends of Animals Inc. v. U.S. Surgical Corp.*, 131 F.3d 332, 334 (2d Cir. 1997) (per curiam). "[D]ismissal under Fed. R. Civ. P. 37 is a drastic remedy that should be imposed only in extreme circumstances, usually after consideration of alternative, less drastic sanctions." *John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.*, 845 F.2d 1172, 1176 (2d Cir. 1988) (internal quotation marks and citations omitted).

In the circumstances of this case, the district court acted within its discretion in imposing lesser sanctions than the "drastic remedy" of dismissal. *Waterbury*, 845 F.2d at 1176. The record reflects that the court gave due consideration to Rockefeller's complaints of chicanery and, with the benefit of over a decade of experience with the case, took a more charitable view of some of Emamian's conduct than the version of events set forth by Rockefeller. *See, e.g.*, Joint App'x 2976 ("[I]t [is] . . . conceivable for a reasonable person to read the Federal Rules 26(e) and 26(a)(2)(e) to require that there has to be some difference or some change for the rule to require some sort of penalty."). Bearing in mind the "considerable deference" owed to "the district court's familiarity with the proceedings" in this context, we decline to disturb the district court's determination that sanctions falling short of the most extreme possible remedy were appropriate. *Friends of Animals*, 131 F.3d at 334.

2. Sufficiency of the Evidence

Finally, Rockefeller contends that there was insufficient evidence for a reasonable jury to find in Emamian's favor on her claim of intentional discrimination on the basis of race or national

7

origin and that, accordingly, the district court erred in denying its motion to set aside the verdict. This Court reviews *de novo* a district court's ruling on a motion for judgment as a matter of law. *Zellner v. Summerlin*, 494 F.3d 344, 371 (2d Cir. 2007). A district court "may grant a motion for judgment as a matter of law only if it can conclude that, with credibility assessments made against the moving party and all inferences drawn against the moving party, a reasonable juror would have been *compelled* to accept the view of the moving party." *Id.* at 370–71 (internal quotation marks omitted). "In ruling on such a motion, the court must bear in mind that the jury is free to believe part and disbelieve part of any witness's testimony." *Id.* at 371. Judgment as a matter of law should be granted only when "(1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against [it]." *Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1154 (2d Cir. 1994) (quoting *Bauer v. Raymark Indus., Inc.*, 849 F.2d 790, 792 (2d Cir. 1988)).

Rockefeller falls short of this demanding standard. Considering, as we must, the "totality of the circumstances" and the "overall context in which the challenged conduct occurs," the trial record contains sufficient evidence to support the jury's verdict. *Mihalik v. Credit Agricole Chevreux North Am., Inc.*, 715 F.3d 102, 111 (2d Cir. 3013) (internal quotation marks, alterations, and citation omitted). Under the capacious NYCHRL standard, which is generously construed to facilitate its "uniquely broad and remedial purposes," *id.* at 109, "the plaintiff need only show differential treatment—that she is treated 'less well'—because of a discriminatory intent," *id.* at 110. Here, Emamian introduced ample evidence of being "treated less well" in the lab of Dr. Greengard ("Greengard"), including being paid a lower salary, being subjected to harsher criticism

and ridicule, and being denied office space and resources relative to non-Iranian employees. Moreover, there was sufficient evidence at trial to permit a reasonable jury to conclude that this differential treatment was caused at least in part by a discriminatory motive. The jury could have concluded that Greengard harbored such a motive based on testimony regarding a conversation between Greengard and Emamian during which, according to Emamian, Greengard aggressively questioned her about her headscarf in a hostile manner. Moreover, Greengard testified that he had been informed by his secretary, whom Greengard described as a "highly educated woman who grew up in Tehran, as did Dr. Emamian," that Emamian's headscarf indicated her submissiveness to men and that Greengard should not have hired her. Joint App'x 2161–62. In addition, the jury could have found probative the email sent to the entire lab by Dr. Marc Flajolet ("Flajolet"), another scientist in the lab, which contained language that, according to Emamian's testimony, constituted a racist slur directed specifically at her. Rockefeller's attempt to discount the Flajolet email as irrelevant because it was not sent by Greengard is unavailing, particularly in light of our obligation to consider the totality of the circumstances in determining whether Emamian was treated less well at least in part because of her race or national origin and given Greengard's subsequent testimony, upon reviewing the email in the course of litigation, that he found "nothing objectionable in it." *Id.* at 2163.

At bottom, drawing all possible inferences against the moving party and considering the broad standard of the NYCHRL, we conclude that judgment as a matter of law in favor of Rockefeller was properly denied.

\* \* \*

9

We have considered the parties' remaining arguments and find them to be without merit.

Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk